## PEOPLE v. FOWLER.

### (Bronx County Court.   July 1, 1914.)

1. INFANTS (§ 19\*)—CUSTODY AND PROTECTION—COMMITMENT OF INCORRIGIBLES
—APPEAL.

An appeal from a commitment of an infant for association with dissolute persons by a justice of the New York Court of Special Sessions sitting in the Children's Court, under Penal Law (Consol. Laws, c. 40) § 486, authorizing such a commitment to an incorporated charitable institution, lies to the County Court, as expressly authorized by Code Cr. Proc. § 749, rather than to the Appellate Division of the Supreme Court, under Laws 1910, c. 659, section 38 of which provides that the judgment of a single justice sitting in the children's court shall be the judgment of the Court of Special Sessions, and section 40 of which authorizes the defendant to appeal from an adverse judgment of that court as in an action prosecuted by indictment, and which by article 8 repeals all inconsistent acts.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 19; Dec. Dig. § 19.\*]

2. INFANTS (§ 19\*)—CUSTODY AND PROTECTION—COMMITMENT OF INCORRIGIBLES
—NATURE OF PROCEEDING.

While a proceeding in the Children's Court for the commitment of an infant for association with dissolute persons, under Penal Law (Consol. Laws, c. 40) § 486, is not a criminal trial, it is a judicial inquiry involving the separation and stigmatizing of parent and child, and the constitutional safeguards, the presumption of innocence and the benefit of every reasonable doubt, should be applied.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 19; Dec. Dig. § 19.\*]

3. INFANTS (§ 19\*)—CUSTODY AND PROTECTION—COMMITMENT OF INCORRIGIBLES
—SUFFICIENCY OF EVIDENCE.

The unsworn statement of the infant that she had about five months previously borne a child from intercourse under force or fear with a man since deceased, and the like unsworn statement of the complaining witness that upon complaint to the society of which he was an officer he found the infant and two other girls in her mother's flat, "all painted and powdered up," in company with a young man, were not sufficient basis for her commitment by the Children's Court under Penal Law (Consol. Laws, c. 40) § 486, for association with dissolute and vicious persons in danger of becoming morally depraved.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 19; Dec. Dig. § 19.\*]

4. INFANTS (§ 19\*)—CUSTODY AND PROTECTION—COMMITMENT OF INCORRIGIBLES
—EVIDENCE—REVIEW.

In passing upon the sufficiency of the evidence to support a commitment of an infant under Penal Law (Consol. Laws, c. 40) § 486, for association with dissolute persons, only the evidence received on the day the court found her guilty of so associating is to be considered, and not evidence received subsequently in determining the disposition to be made of her.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 19; Dec. Dig. § 19.\*]

Appeal from Children's Court, Bronx County.

Lillian Fowler, an infant, was committed to the Protestant Episcopal House of Mercy for association with dissolute and vicious persons

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in danger of becoming morally depraved, and she appeals. Reversed, and new trial ordered.

Francis Martin, Dist. Atty., of New York City (Richard H. Mitchell, of New York City, of counsel), for the People.

Cornelius J. Sullivan, of New York City, for Society for Prevention of Cruelty to Children.

Almy, Van Gordon, Evans & Kelly, of New York City (William S. Evans, of New York City, of counsel), for defendant.

GIBBS, J. This is an appeal from a commitment of the Children's Court, Bronx county, made April 3, 1914, committing the infant to the Protestant Episcopal House of Mercy.

Lillian Fowler, a girl of about 15 years of age, was charged with being "willfully disobedient to her parents and guardians, associating with dissolute and vicious persons, and in danger of becoming morally depraved, in violation of the provisions of chapter 410, Laws of 1882, as amended by chapter 353, Laws of 1886, as amended by chapter 436, Laws of 1903, as amended by chapter 537, Laws of 1904, and in violation of the provisions of chapter 453, Laws of 1904, as amended by chapter 225, Laws of 1906," as per complaint filed against her on the 1st day of April, 1914, in the Children's Court of the County of Bronx by Richard J. Curran, an officer of the Society for the Prevention of Cruelty to Children. The said officer also states in his complaint that he was informed by the said Lillian Fowler that she perpetrated acts of sexual intercourse with a man who is now dead, in the apartment of her mother at 1184 Fox street, and that as a result of the said intercourse, on the 30th day of October, 1913, she gave birth to a male child, in the Sloan Maternity Hospital, in the city of New York. The child has since been disposed of by adoption.

There are two questions of importance presented on this appeal, namely the question of the jurisdiction of this court to hear this appeal, and whether the evidence adduced was sufficient to maintain the allegations of the complaint, to wit, that she, Lillian Fowler, was willfully disobedient to her parents and guardians and associated with dissolute and vicious persons and in danger of becoming morally depraved. I will take these questions up in their order.

[1] It is contended by the learned counsel for the Society for the Prevention of Cruelty to Children that the County Court is without jurisdiction to entertain the present appeal for the reason that the "Inferior Courts' Act," enacted in 1910 (Laws 1910, c. 659), provides for appeals from the Courts of Special Sessions (section 40 of the said act) in the following manner:

"If any judgment or determination made by the Court of Special Sessions shall be adverse to the defendant he may appeal therefrom in the same manner as from a judgment in an action prosecuted by indictment, and may be admitted to bail upon an appeal in like manner; and if the judgment of the Supreme Court upon such an appeal shall be adverse to the defendant, he may appeal therefrom to the Court of Appeals as prescribed in the Code of Criminal Procedure. In case of any such appeal to the Supreme Court, or to the Court of Appeals, the procedure in, and the jurisdiction of, the said courts respectively, shall be the same as from a judgment of conviction after indictment."

It is urged further that, under section 38 of the same act, it is provided that a single justice sitting in the Children's Court possesses all the power and jurisdiction of the Court of Special Sessions, and that an order, determination, or judgment of said single justice shall be the order, determination, or judgment of the Court of Special Sessions; that, in the light of these sections of the law, this appeal can only be entertained by the Appellate Division.

I have examined the very instructive and exhaustive brief of the learned counsel for the society with great care and given the points urged by him careful consideration; but I am convinced, after a thorough analysis of the sections of the law referred to by him and the cases cited in his brief, that the County Court has jurisdiction in cases of commitment from the Children's Court. The examination was held and the commitment was made by a justice of the Court of Special Sessions, it is true; but at that time he was sitting and acting in the capacity of a city magistrate. It is provided by chapter 659 of the Laws of 1910, § 30, that all justices of the Court of Special Sessions are magistrates, and that the Chief Justice and Associate Justices of the court are magistrates and shall have and exercise all the jurisdiction and powers, not inconsistent with the act, which are conferred by law upon magistrates. Under the "Inferior Courts' Act," the Children's Court and its justices have jurisdiction over all trials and proceedings affecting children under 16 years of age. The Children's Court was created with the benevolent and enlightened purpose in view of protecting juvenile offenders from associating and coming in contact with vicious and depraved adults charged with crime, the law recognizing by its enactment the danger of indiscriminate association to the child, forced by detention to mingle with the criminal, depraved, and dissolute, charged with offenses against the law; also, to provide a tribunal exclusively devoted to disposing of charges and delinquencies which if committed by persons over 16 years of age would be regarded as felonies or misdemeanors.

A study of the law regarding Children's Courts in this state, giving the Courts of the Special Sessions jurisdiction as herein pointed out, shows a marked distinction between justices in the children's department of the Court of Special Sessions, acting as justices of the Court of Special Sessions, where children are arraigned charged with crime, such as felonies or misdemeanors, under and pursuant to section 2186 of the Penal Law, and proceedings in which the child is arraigned before the court, not charged strictly with the commission of an offense, but, as in the case under consideration, with "keeping company with immoral or vicious persons," or being disorderly or ungovernable, or without proper guardianship, or some kindred proceeding, as provided for in sections 485 and 486 of the Penal Law. Where a child is charged with an offense which in an adult would be a felony or misdemeanor, the charge is always disposed of by the Children's Court, sitting as a court, by one of its justices. In the other or lesser things, charges not amounting to crimes, disposition is made by a justice of the Court of Special Sessions, sitting as a magistrate. Under this interpretation of the law, Judge Gaynor wrote the decision in the case of People v.

O'Neill, 117 App. Div. 826, 102 N. Y. Supp. 988. The question there, as to whether an appeal from a commitment of the Children's Court was reviewable by the Appellate Division or the County Court, was squarely met, and it was said:

"Other appeals (referring among other things to commitments) from orders or judgments of magistrates are left as they were. The transfer of the trial to those lesser charges not amounting to crimes against such children from the city magistrates, who theretofore tried them, to the justices of the Children's Court of Special Sessions, as magistrates—i. e., from one set of magistrates to another set—did not change the method of appeals in such cases. Section 749 of the Code of Criminal Procedure regulates appeals from magistrates, and requires them to be to the County Court."

I do not agree with the view that sections 38 and 40 of the laws of 1910, c. 559, art. 3, change the prior laws and therefore destroy the effect of Judge Gaynor's decision. An examination of these sections does not reveal any change as to the manner of appeal from the Children's Court, since the decision of People v. O'Neill was written, and which is on this point the controlling authority. I am satisfied that section 40, relating to appeals from the Court of Special Sessions, refers to the court sitting as a trial court, and not upon appeals from summary proceedings or commitments from a justice sitting as a magistrate. The further contention that the repealing clause of the Laws of 1910, c. 659, being article 8 thereof, does away with the laws of 1907, supra, and 1903, supra, is also in conflict with my viewpoint. It follows therefore that the County Court has jurisdiction to hear and determine this appeal.

[2] The next and last question is: Was there sufficient legal evidence before the learned justice of the Court of Special Sessions, sitting as a magistrate, upon which a summary commitment could justly be found. An examination of the testimony taken in this proceeding at the trial, on April 1, 1914, and on April 3, 1914, the day for disposition or sentence, does not show a single word of testimony taken under oath, or that the defendant or her mother, who was present, was warned of her rights to obtain counsel, an adjournment, or witnesses. In this connection, it is urged that there was no error committed because the proceeding in question is not strictly a criminal proceeding, and the rules of evidence relating to the prosecution of crime are therefore not applicable. It cannot be denied that there is some force to this contention. I am inclined to agree with the learned counsel for the society that the proceeding is not a criminal trial, yet it is certainly a judicial inquiry, in which the state steps in, seeking to prove the child a fit subject for institutional confinement and the parent or parents of the child proceeded against as unfit to exercise control. Upon the state proving its case, the parent is deprived of the society of the child and the child of its home and the society of its parent or parents, the child is further deprived of its liberty for years perhaps and forever branded as an inmate of an institution; the parents stigmatized as possessing a child, who, upon a judicial inquiry, was incarcerated in an institution. So it will be seen that in a proceeding or inquiry of this kind whether in referring to it we use the terms trial, sentence, proceeding, quasi criminal proceeding, or any other term, is, in the

final analysis, a proceeding in which are involved basic and fundamental rights of the parent and of the child, which should be safeguarded by all the forms of law. There is no stronger tie than the tie which binds a parent and a child, and the strong arm of the state as parens patriæ should only be extended in forcing a child from its parent, after all the requirements of law have been complied with. In this case, the record shows that the mother pleaded with the court for the possession of her child. She was willing to maintain and support it, to use her own words, "until her death," and, in so far as the record discloses, is a hard-working, honest woman, without a husband, employed in one of our large department stores, and using the salary earned towards the support of her home, the apartment from which the defendant was taken. There should be no straining in our courts in favor of an institution as against a home or a mother.

[3, 4] The learned trial court, on April 1st, found the infant, Lillian Fowler, likely to become morally depraved, and as guilty of associating with dissolute and vicious persons, upon the bare statement of the infant and Officer Curran of the society, on that day, and, for all purposes of the finding, the proceeding was then and there concluded. There were some other statements made by investigators of the society and other persons on the 3d day of April, 1914, but those statements were only received for the purpose of enlightening the conscience of the court as to the disposition of the infant, and not on the question of guilt. The question then is: Was there sufficient legal evidence upon which to find that at the time of the arraignment the defendant was in danger of becoming morally depraved and associating with dissolute and vicious persons. The witnesses examined at the trial (April 1, 1914), and upon the statements of which the infant was remanded to April 3, 1914, for disposition, were Lillian Fowler, the infant, and Richard Curran, an officer of the society. The statements of Lillian Fowler are called a confession because she states, in substance, that on October 30, 1913, she gave birth to a child, which was the result of sexual intercourse had about six times between the infant and a man who is now dead and submitted to by her under force or fear. I do not understand under what theory this could be considered a confession of the complaint made herein, because even if we assume that the bare statements made by the infant, without being warned of her rights or given an opportunity to obtain counsel, was a confession, it certainly was not a confession that on April 1, 1914, or thereabouts, she was "associating with dissolute or vicious persons, and in danger of becoming morally depraved." If her statements be taken for true, then she was raped some 14 or 15 months prior to her arraignment and is in no way an admission of the allegations laid down in the complaint. In addition to this, Officer Curran of the society testifies, in substance, that as a result of a complaint received by the society on March 28, 1914, he made an investigation, and called at the home of the Fowler family some time in the afternoon (the home maintained by the mother of Lillian Fowler), and the door of the apartment was opened by the defendant "all painted and powdered up"; that in this apartment there were two girls and a young man, a printer by trade, of about 22 or 23

years of age, also two other girls "painted and powdered up." Outside of these statements on the day of the trial, the record is barren of a word of testimony in support of the complaint. The conditions found by Officer Curran when he called at the home of this infant and her mother are not at all inconsistent with the present morality of the infant or her associates or her mother. A girl found in the home of her parent "painted and powdered up" with two other girls "painted and powdered," and a young man, does not necessarily indicate being vicious and associating with vicious and depraved persons. While I do not believe that the statements made by various persons on April 3d, the day of disposition and commitment, should be considered in deciding this question as to whether the defendant should have been found unfit to live at home, yet it may be said in passing that the statements there, not under oath, are just as consistent with innocence as with guilt; and, although a proceeding of this kind is not strictly speaking a criminal trial, yet I believe, in view of the possible consequences involved, that the constitutional safeguards provided under our law, the presumption of innocence and the benefit of every reasonable doubt, should be applied.

I find that there was no legal evidence before the learned trial justice, sitting as a magistrate, upon which to base a finding under the complaint.

It therefore follows that the judgment of conviction and commitment be reversed, and a new trial ordered.